Amanda L. Bruss, Esq. (NJ Attorney ID No. 316142019)
amanda@trestlelaw.com
Kristen G. Roberts, Esq. (pro hac vice forthcoming)
kristen@trestlelaw.com
Trestle Law, APC
3131 Camino Del Rio N. # 380
San Diego, CA 92108
(619) 343-3655
*Attorneys for Plaintiff Mango Technologies, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MANGO TECHNOLOGIES, INC., a Delaware Corporation,<br><br>Plaintiff,<br>vs.<br><br>CLICKUP INC., a Delaware Corporation, and MICHAEL ASHKENAZI, an individual,<br><br>Defendants. | Civil Action No. 26-cv-15167<br>COMPLAINT AND DEMAND FOR JURY TRIAL<br>1. FEDERAL TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114;<br>2. FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125(A);<br>3. FEDERAL TRADEMARK DILUTION, 15 U.S.C. § 1125(C);<br>4. CYBERSQUATTING, 15 U.S.C. § 1125(D);<br>5. COMMON LAW TRADEMARK INFRINGEMENT;<br>6. COMMON LAW UNFAIR COMPETITION;<br>7. STATUTORY UNFAIR COMPETITION, N.J.S.A. 56:4-1 AND 56:4-2;<br>8. TRADEMARK DILUTION, N.J.S.A. 56:3-13.20; AND<br>9. DECLARATORY JUDGMENT, 28 U.S.C. §§ 2201–2202 |

Plaintiff, Mango Technologies, Inc. ("Mango"), a Delaware corporation with its principal place of business at 350 Tenth Avenue, Suite 500, San Diego, California 92101, through its undersigned attorneys, brings this Complaint against Defendants Clickup Inc. ("Clickup Inc."), a Delaware corporation with its principal place of business at 6 Sheraton Drive, Lakewood, New Jersey 08701, and Michael Ashkenazi ("Ashkenazi"), an individual residing at 6 Sheraton Drive, Lakewood, New Jersey 08701. Mango states the following allegations based on personal knowledge of its own actions and, where applicable, on information and belief.

## I. NATURE OF THE ACTION

1. This is an action for willful trademark infringement, unfair competition, and dilution of Plaintiff's famous CLICKUP mark. Plaintiff Mango Technologies, Inc., which does business as ClickUp, is the maker of the ClickUp productivity and project management software platform used by millions of people worldwide. Defendants adopted, applied to register, and continue to use a mark identical to Plaintiff's federally registered CLICKUP marks, letter for letter, in connection with online recruitment advertising services.

2. Defendants did not come to the CLICKUP name innocently. On October 29, 2024, Judge Buchwald entered a Consent Judgment Order and Injunction personally signed by Defendant Michael Ashkenazi (identified in that document as Michael Ash) enjoining his company, LevelUp Staff, Inc., from any further infringement of another party's LEVELUP trademark, ending a dispute in which four cease and desist letters had documented his repeated attempts to evade liability through cosmetic renamings. That same day, Ashkenazi purchased the domain click-up.com, after first confirming through a search of the GoDaddy domain database that clickup.com already belonged to someone else. Two days after that,

he applied to register CLICKUP with the United States Patent and Trademark Office (the "USPTO").

3. Despite his prior trademark dispute, Ashkenazi did all of this without retaining counsel and without any meaningful trademark clearance. By his own deposition testimony, he ran only free online searches that he deliberately limited to a single trademark class, even though he "knew what to look out for" from the LevelUp dispute, and even though he recalls seeing "Click" formative marks in his search results. He adopted the identical CLICKUP mark anyway.

4. Defendants have nothing invested in the CLICKUP name. They claim to have no functioning website, no social media presence, no business cards, and claim to have made a single marketing flyer that has never been published anywhere. Yet despite Plaintiff's pending opposition before the Trademark Trial and Appeal Board (the "TTAB") and Defendants' own admissions, Defendants refuse to select any of the countless non-infringing names available to them. This action seeks to bring Defendants' pattern of infringement to an end.

## II. PARTIES

5. Plaintiff Mango Technologies, Inc. is a Delaware corporation with its principal place of business at 350 Tenth Ave, Suite 500, San Diego, California 92101. Plaintiff does business as ClickUp.

6. Defendant Clickup Inc. is a Delaware corporation with its principal place of business at 6 Sheraton Drive, Lakewood, New Jersey 08701. On information and belief, Clickup Inc. has no office or place of business other than 6 Sheraton Drive, Lakewood, New Jersey, from which its sole officer and only employee operates the company.

7. Defendant Michael Ashkenazi is an individual who is domiciled in New Jersey and resides at 6 Sheraton Drive, Lakewood, New Jersey 08701, and also

goes by the name Michael Ash. Ashkenazi is the sole officer of Defendant Clickup Inc. Ashkenazi personally makes, directs, and controls all of Clickup Inc.'s branding, marketing, and naming decisions, including the decision to adopt, apply to register, and continue using the CLICKUP mark at issue in this action. Clickup Inc. and Michael Ashkenazi are referred to collectively herein as "Defendants." Ashkenazi has testified that he is Clickup Inc.'s president and director and its only employee, describing himself as "the one-man band."

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b), and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

9. This Court has general personal jurisdiction over Defendant Clickup Inc. because its principal place of business is in Lakewood, New Jersey, and it is therefore at home in this State. Clickup Inc. is operated exclusively from 6 Sheraton Drive, Lakewood, New Jersey, the home of its sole officer, director, and only employee.

10. This Court has general personal jurisdiction over Defendant Ashkenazi because he is domiciled in New Jersey. In moving to dismiss Plaintiff's prior action for lack of personal jurisdiction, Defendants represented to the United States District Court for the Southern District of California that Clickup Inc. is "domiciled in New Jersey" and that Ashkenazi "is also domiciled in New Jersey." Defendants also described New Jersey as their "home forum" and asked that court, if it did not dismiss the action, to transfer it to this District.

11. This Court also has specific personal jurisdiction over both Defendants because Plaintiff's claims arise out of conduct Defendants undertook in New Jersey,

including Ashkenazi's selection and adoption of the CLICKUP name, the purchase of the click-up.com domain name, the preparation and filing of Application Serial No. 98,830,035 and its purported assignment to Clickup Inc., and the operation of Defendants' recruitment advertising business under the CLICKUP mark from Lakewood, New Jersey.

12. Ashkenazi is the sole officer and guiding spirit of Clickup Inc. and personally directed, controlled, and participated in each of the acts described in this Complaint. The exercise of personal jurisdiction over both Defendants is authorized by Fed. R. Civ. P. 4(k)(1)(A) and New Jersey's long-arm rule, N.J. Ct. R. 4:4-4, which permits jurisdiction to the fullest extent allowed by due process, and it comports with due process.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because all Defendants reside in this District and in the State of New Jersey, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including Defendants' adoption of the CLICKUP mark, the purchase of the click-up.com domain name, the filing and purported assignment of Application Serial No. 98,830,035, and Defendants' use of the CLICKUP mark in operating their business from Lakewood, New Jersey.

14. Because Defendants reside and conduct business in Ocean County, New Jersey, and the events giving rise to Plaintiff's claims occurred there, Plaintiff respectfully submits that this action should be allocated to the Trenton vicinage under L. Civ. R. 40.1(a).

//

//

//

## IV. FACTUAL BACKGROUND

### A. Plaintiff's CLICKUP Marks.

15. Plaintiff has used the CLICKUP mark in commerce since at least December 1, 2016, in connection with its productivity and project management software platform, which today serves millions of users worldwide.

16. Plaintiff owns U.S. Registration No. 5,478,488 for the standard character mark CLICKUP, registered May 29, 2018, covering "providing temporary use of online non-downloadable software for project management, collaboration, and task management, and related interactive website services," in International Class 042, first used in commerce December 1, 2016. Plaintiff also owns U.S. Registration No. 5,848,979 for the standard character mark CLICKUP, covering downloadable computer software and mobile software applications for project management, managing customer relationships, collaboration, task management, and managing and automating workflows, in International Class 009, first used in commerce in or around April 2017. Plaintiff further owns U.S. Application Serial No. 99,348,022 for the standard character mark CLICKUP, currently pending and suspended before the United States Patent and Trademark Office, covering business networking, business technology consulting, and referral services in International Class 035, first used in commerce September 25, 2021, and a website featuring blogs, publications, and training workshops in fields including employee recruitment, business organizational management, and project management, in International Class 041, first used in commerce March 5, 2017. That application has been suspended by the United States Patent and Trademark Office in view of Defendant Clickup Inc.'s conflicting intent to use Application Serial No. 98,830,035, as further described below. Plaintiff further owns U.S. Registration Nos. 6,431,832 and 6,431,798, each registered July 27, 2021, for the stylized word mark CLICKUP

with a design element, covering the same downloadable software in International Class 009 and software services in International Class 042, first used in commerce in April 2017 and December 1, 2016, respectively; and U.S. Registration No. 8,219,227, registered April 21, 2026, for the standard character mark CLICKUP BRAIN, covering artificial-intelligence software and services in International Classes 009 and 042.

17. Through years of continuous and widespread use, substantial investment in advertising, including more than $274 million in digital advertising spend since 2020, a television campaign that aired during the 2022 NFL Super Bowl LVI generating approximately 35.4 million impressions in fourteen targeted major metros across the US, and adoption by millions of users across every industry, the CLICKUP mark has become famous and is widely recognized by the general consuming public of the United States as a designation of source for Plaintiff's goods and services.

18. Plaintiff also conducted extensive outdoor advertising campaigns in major metropolitan markets throughout the United States, including Los Angeles, Miami/Fort Lauderdale, New York City, San Francisco, Atlanta, Boston, Chicago, Washington, D.C., West Palm Beach, San Diego, and Dallas. By way of example, Plaintiff spent more than $1 million on billboard advertising campaigns in Los Angeles, Miami/Fort Lauderdale, New York City, and San Francisco. Plaintiff also invested approximately $4.96 million in connection with its 2022 Super Bowl advertising campaign, including approximately $4.5 million for NBC local advertising and an additional $460,500 for affiliate advertising. Plaintiff further committed a minimum of approximately $1.485 million for advertising during the 2022 Olympic Games, approximately $4.45 million for nationwide outdoor

advertising through OUTFRONT Media, and approximately $250,000 for a Spotify advertising campaign targeting the Los Angeles market.

19. The CLICKUP platform has also achieved extraordinary commercial success. Plaintiff currently has more than 13.2 million workspaces and has received an average customer rating of 4.6 stars, including more than 3,000 five star reviews and over 1,000 four star reviews. As a result of Plaintiff's extensive use, advertising, promotion, and commercial success, the CLICKUP mark has acquired widespread consumer recognition and is among the most well known marks in the project management and workplace productivity software industry.

20. The CLICKUP mark was famous, and widely recognized by the general consuming public of the United States as a designation of source of Plaintiff's goods and services, well before October 29, 2024, which, on information and belief, is the earliest date on which Defendants adopted the CLICKUP name.

21. Significant advertising investment, including a substantial portion of the investment described in paragraph 17, was made before October 29, 2024, through paid search, paid social media, online video, audio, display, and affiliate advertising directed to consumers throughout the United States.

22. Beginning in 2020, Plaintiff conducted national out-of-home advertising campaigns under the CLICKUP mark through OUTFRONT Media and Clear Channel Outdoor, comprising hundreds of placements, including buses, bulletins, digital displays, light rail and commuter rail wraps, subway and transit advertising, and displays at Hartsfield-Jackson Atlanta and San Francisco International Airports, in Los Angeles, San Francisco, San Jose, Washington, D.C., Boston, New York City, Atlanta, Miami, San Diego, and Chicago. Plaintiff's advertising has also included a multi-story CLICKUP billboard in Times Square.

23. On February 13, 2022, Plaintiff's 30-second CLICKUP commercial, "Declaration," aired during the third quarter of Super Bowl LVI in fourteen major markets: New York, Los Angeles, Chicago, Philadelphia, Dallas, San Francisco, Washington, D.C., Boston, Miami, San Diego, Austin, Seattle, Charlotte, and Raleigh. The commercial generated approximately 35.4 million impressions. Plaintiff supplemented it with national advertising on NBC's broadcasts of the 2022 Winter Olympics. Forbes covered the commercial before it aired, and MSNBC's Morning Joe discussed it on February 15, 2022.

24. Before October 2024, the CLICKUP brand had also received extensive unsolicited national media coverage. For example, Forbes reported in October 2021 that ClickUp had raised $400 million at a $4 billion valuation. Cheddar interviewed Plaintiff's chief executive officer about that financing. In February 2022, Forbes described ClickUp as a "multibillion-dollar unicorn" serving more than 800,000 teams and millions of users. Business Insider reported in October 2022 on ClickUp's preparations for an initial public offering. TechCrunch reported on ClickUp's product launches in June 2024. Forbes named ClickUp to its Cloud 100 list of the world's top private cloud companies in 2022, 2023, and 2024, ranking it No. 69 in 2024, and ClickUp has remained on the list since, ranking No. 70 in 2025. Fast Company named ClickUp one of the World's Most Innovative Companies in March 2024.

25. Consumers engage with the CLICKUP brand at enormous scale. Plaintiff's website at clickup.com received hundreds of millions of visits between January 2022 and September 2024. The CLICKUP platform grew from more than 800,000 teams in early 2022 to more than 10 million users by January 2024, and it now serves more than 20 million users worldwide. In 2024, Plaintiff also hosted in-person CLICKUP "Secret Supper" community events in cities across the United

States, including San Diego, Chicago, Los Angeles, San Francisco, New York, and Boston.

26. Plaintiff's use of the CLICKUP mark is substantially exclusive. In its February 9, 2026 responses to Plaintiff's requests for admission in the Opposition, Clickup Inc. admitted that it is not aware of any third-party mark in use that is identical to CLICKUP, and that it has not identified any dictionary definition of "CLICKUP" that describes business management software.

27. The CLICKUP mark is likewise famous in the State of New Jersey. Plaintiff's Super Bowl LVI commercial aired in the New York and Philadelphia television markets, which together cover substantially all of New Jersey. Plaintiff's extensive out-of-home advertising in New York City, including on buses, in the subway, at airports, and in Times Square, reached the many New Jersey residents who commute to and visit New York City. Plaintiff's customers include New Jersey health systems, as well as senior living, home care, and hospice providers of the same kind Defendants target.

**B. Ashkenazi's repeated, adjudicated trademark infringement and role as guiding spirit behind Clickup Inc.'s infringement.**

28. Ashkenazi was previously the President and Chief Executive Officer of LevelUp Staff, Inc., a New Jersey corporation formed on October 13, 2021, that offered recruitment advertising and staffing consulting services under the name LevelUp Staff.

29. On September 17, 2024, LevelUp HCS, LLC filed suit against LevelUp Staff, Inc. in the United States District Court for the Southern District of New York, Civil Action No. 1:24-cv-07045-NRB, alleging trademark infringement, false designation of origin, and unfair competition arising from LevelUp Staff's use of

the LEVELUP mark and its variants in connection with recruitment advertising services, the same category of services at issue in this action.

30. Both before and after filing suit, LevelUp HCS sent LevelUp Staff four cease and desist letters, dated July 6, 2023, August 21, 2023, October 10, 2023, and December 14, 2023, documenting LevelUp Staff's successive attempts to evade infringement liability through cosmetic rebranding, from LevelUp Staff to Levels-Up Staff to Lever-Up Staff, each identified by counsel as still infringing.

31. On October 29, 2024, the district court entered a Consent Judgment Order and Injunction, personally signed by Ashkenazi as President and CEO of LevelUp Staff, Inc., permanently enjoining LevelUp Staff, its officers, and all persons acting in concert with it from any use of the LEVELUP marks or any confusingly similar variations or formatives, requiring transfer of the levelupstaff.com domain, and requiring payment of $7,000 to LevelUp HCS.

32. The Consent Judgment lists Ashkenazi's address as 6 Sheraton Drive, Lakewood, New Jersey 08701, and his email as moishe91@gmail.com. These are the identical address and email Defendant Clickup Inc. uses in its correspondence with the Trademark Trial and Appeal Board in the pending opposition between the parties to this action.

33. On October 29, 2024, the same day the Consent Judgment was entered against him, Ashkenazi purchased the domain click-up.com, having first personally confirmed through a search of the GoDaddy domain database that clickup.com was already registered to another party.

34. Ashkenazi did not retain trademark counsel and did not obtain any professional trademark clearance before adopting the CLICKUP name for Clickup Inc. The only searches undertaken were free online searches run by Ashkenazi himself through TrademarkEngine.com and LegalZoom's free trademark search

platform, which Ashkenazi deliberately limited to International Class 035. Ashkenazi has admitted at deposition that, at the time of his search, he "knew what to look out for" as a result of the LevelUp dispute.

35. Ashkenazi has further admitted at deposition that his search may have revealed other CLICKUP registrations in other classes, and that he in fact recalls seeing marks containing the term "Click" during his search, while claiming he cannot recall whether they were Plaintiff's marks: "I do remember seeing something-Click. But I don't remember exactly if it was your clients or ClickUp Sell or different names that are sounding in similarity." Ashkenazi nonetheless proceeded to adopt and apply to register the identical mark, confining his attention to Class 035 based on his admittedly self-derived belief, not based on the advice of any counsel, that he could lawfully adopt a mark identical to another party's registered mark so long as it was in a different class. Ashkenazi retained no records of any search. That testimony cannot be reconciled with Defendants' verified interrogatory response that Defendants first became aware of Plaintiff's marks upon notice of Plaintiff's opposition.

36. Clickup Inc. is, in substance, the same recruitment advertising business that Ashkenazi previously operated as LevelUp Staff, operating under a new name. It is run by the same sole principal, from the same address at 6 Sheraton Drive, Lakewood, New Jersey, using the same email address, and it offers the same recruitment advertising services to the same categories of customers. Defendants have stated in sworn discovery responses that Clickup Inc. is the successor to LevelUp Staff, Inc. and that all business operations of LevelUp Staff, Inc., including its activities, assets, trademarks, goodwill, and existing client relationships, were transferred to Clickup Inc. At his deposition, however, Ashkenazi confirmed that there was no formal transition at all: he made no

announcement of the name change, verbally introduced "ClickUp" in parentheses next to "LevelUp" on telephone calls with clients until, in his words, "I got them used to it, and then I would just switch," and continued receiving client payments into LevelUp's accounts for months after the purported change. The adoption of the CLICKUP name was the latest in the series of renamings of that single business, from LevelUp Staff, to Levels-Up Staff, to Lever-Up Staff, and finally, on the same day the Consent Judgment was entered, to CLICKUP.

37. U.S. Trademark Application Serial No. 98,830,035 was filed by LevelUp Staff, Inc. on an intent to use basis. Defendants have represented, in a purported Assignment Agreement prepared through the online service TrademarkEngine.com, that LevelUp Staff, Inc. assigned the application and associated rights to Clickup Inc. No Amendment to Allege Use or Statement of Use had been filed or accepted for the application as of the date of the purported assignment. Defendants have admitted that no purchase agreement and no other written agreement documents the transaction referenced in the purported Assignment Agreement.

38. Ashkenazi's deposition testimony contradicts Defendants' verified interrogatory response that all business operations and goodwill of LevelUp Staff, Inc. transferred to Clickup Inc. Ashkenazi testified that Clickup Inc. does not perform the recruitment and staffing services that constituted LevelUp Staff's business; that LevelUp Staff's website and domain were surrendered to LevelUp HCS under the Consent Judgment; that LevelUp Staff's bank account has been closed and the entity awaits only a final tax return; and that Clickup Inc.'s sole revenue relationship, an arrangement with the job platform Indeed, is governed by a new agreement in Clickup Inc.'s name rather than by any contract assigned from LevelUp Staff. Whatever business adopted the CLICKUP name in late 2024, it was not an ongoing and existing business to which the CLICKUP mark pertained.

39. On information and belief, the purported assignment was not accompanied by any bona fide transfer of an ongoing and existing business, and no goodwill in the CLICKUP mark existed or was capable of being transferred, as the mark had never been used in commerce by the purported assignor. The purported assignment was an assignment in gross and was made in violation of 15 U.S.C. § 1060(a)(1), and it is void.

40. Defendants' conduct in this matter follows the same pattern documented in the LevelUp litigation: personal adoption by Ashkenazi of a mark identical to another party's registered trademark, without clearance, followed upon objection by cosmetic half measures rather than genuine rebranding.

41. Ashkenazi is, and at all relevant times has been, the sole officer, sole decision maker, and guiding spirit of Clickup Inc. He personally selected the CLICKUP name, personally purchased the click-up.com domain, personally signed Clickup Inc.'s discovery responses in the pending TTAB proceeding, and is the only individual involved in any of Clickup Inc.'s branding, marketing, or naming decisions. At his deposition as Clickup Inc.'s designated corporate representative, Ashkenazi described himself as "the one-man band," confirmed that Clickup Inc. has no other employees and is essentially him, and confirmed that he operates the company from his home, maintains no written agreements with any client, and is the sole custodian of the company's records. Ashkenazi personally directed, participated in, and was the active, conscious force behind each act of infringement alleged in this Complaint, and is therefore individually and personally liable, jointly and severally with Clickup Inc., for the infringement, unfair competition, and dilution alleged herein.

//

**C. Defendants' conduct infringes Plaintiff's registered trademarks.**

42. Defendants operate a business offering recruitment advertising services, including strategic guidance on the branding and placement of job postings to senior care and assisted living providers, and intend to expand into additional industries.

43. Ashkenazi has described Clickup Inc. at deposition as "an advertising and marketing agency" focused on building the online brand visibility of its clients. He has likewise admitted that he selected the CLICKUP mark precisely because it "gives off the connotation of brand visibility," such that "it's like you're higher in visibility," the same commercial impression carried by Plaintiff's famous mark.

44. Defendants' services are rendered and marketed nearly entirely through online channels. Ashkenazi has admitted at deposition that Clickup Inc. operates exclusively through the online platform Indeed.com, that his clients access and manage their advertising campaigns by logging in online, and that virtually all of the job candidates reached through Defendants' services come through internet channels.

45. On October 31, 2024, LevelUp Staff, Inc. filed U.S. Trademark Application Serial No. 98,830,035, on an intent to use basis, seeking federal registration of the standard character mark CLICKUP, identical to Plaintiff's registered mark, for recruitment advertising services in International Class 035. The purported assignment of the application to Clickup Inc. followed. The filing came shortly after Ashkenazi personally signed the Consent Judgment in the LevelUp litigation and purchased the click-up.com domain.

46. Defendants intend to use online marketing and search engine visibility in connection with the CLICKUP mark, and Defendants have admitted that they intend to offer their services under the CLICKUP mark to United States consumers

located outside of New Jersey and to potential customers who may locate Defendants through online searching.

47. A Google search for the term CLICKUP returns search results directing users to Plaintiff's website, as Clickup Inc. has admitted, illustrating the overlap in the parties' online presence under the identical mark and the resulting risk of consumer confusion and improper diversion of interest through the internet search channels by which Defendants have admitted potential customers may locate their services. Ashkenazi has further admitted that he has himself run Google searches for the term CLICKUP since filing the application.

48. Plaintiff has received, or come into possession of, written correspondence intended for Defendant Clickup Inc. in which the sender describes a business matching Plaintiff's productivity and project-management software platform, rather than the recruitment advertising business Defendants actually operate under the CLICKUP name. This is further evidence of actual, real-world confusion arising from Defendants' use of a mark identical to Plaintiff's.

49. Defendants have not established any process to track communications that may have been misdirected to them and intended for Plaintiff.

50. Defendants' insistence on keeping the CLICKUP name is all the more indefensible because Defendants have nothing invested in it yet. Ashkenazi contended at his deposition that Clickup Inc. has no functioning website, only a dormant "Coming Soon" landing page at click-up.com; that he purchased the domain principally to obtain a matching email address; that Clickup Inc. has no social media presence of any kind, no LinkedIn page, and no business cards; that its only marketing material is a single flyer that was never published anywhere and was sent, at most, to one client. Ashkenazi likewise testified that his business is generated through word of mouth and personal relationships that do not depend on

the CLICKUP name, and that when he gave up the LevelUp Staff name he did so without difficulty because he "didn't have really a need at that point" for the name. A change of name would cost Defendants essentially nothing. Their refusal to make that change, in the face of Plaintiff's registered and famous mark, is a deliberate choice.

51. Defendants nonetheless persist in asserting rights they do not have. At his deposition, Ashkenazi repeatedly asserted that the CLICKUP mark "was approved already" and is registered to Clickup Inc., notwithstanding that the application stands opposed and no registration has issued.

52. On August 20, 2025, Plaintiff filed a Notice of Opposition against Clickup Inc.'s application before the Trademark Trial and Appeal Board, currently pending as Opposition No. 91301165. Clickup Inc. answered on September 20, 2025, denying likelihood of confusion and asserting affirmative defenses, including that its assignment from LevelUp was proper. Through two rounds of sworn discovery responses since, Defendants have been informed in detail of the basis for Plaintiff's superior rights, have admitted that a Google search for CLICKUP returns Plaintiff's own website, and have admitted that they have conducted no consumer recognition survey and no market research concerning consumer perception of their mark, yet have refused to abandon the CLICKUP name, withdraw the application, or rebrand.

53. Defendants' application has also directly obstructed Plaintiff's own efforts to secure federal registration. On January 13, 2026, the USPTO issued an Office Action on Plaintiff's Application Serial No. 99,348,022 identifying Clickup Inc.'s earlier filed Application Serial No. 98,830,035 as a potential bar to registration of Plaintiff's own mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), solely because Defendants' application had an earlier filing date. On March 20,

2026, the USPTO formally suspended action on Plaintiff's Application Serial No. 99,348,022 for two independent reasons, both tied to Defendants, the earlier filing date of Clickup Inc.'s Application Serial No. 98,830,035, and the pendency of Opposition No. 91301165 itself. Defendants' improper filing and refusal to abandon the CLICKUP name has therefore not merely created a risk of marketplace confusion, it has directly and concretely prevented Plaintiff from securing federal registration of its own mark for additional services, notwithstanding Plaintiff's priority of use dating to December 1, 2016, more than eight years before Defendants filed Application Serial No. 98,830,035 on October 31, 2024.

## V. <u>CLAIMS FOR RELIEF</u>

### COUNT I

### Federal Trademark Infringement, 15 U.S.C. § 1114

54. Plaintiff realleges and incorporates the foregoing paragraphs.

55. Defendants' use of CLICKUP, a mark identical to Plaintiff's registered mark, in connection with Defendants' recruitment advertising services, without the consent of Plaintiff, is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of Defendants' services. This likelihood of confusion is heightened by the identity of the marks, the overlapping trade channels through which both parties' services are marketed and located online, including internet search results in which, as Clickup Inc. has admitted, the identical term CLICKUP can return results directing users to Plaintiff's website.

56. Defendants' infringement is willful. Ashkenazi, having personally signed a federal consent judgment admitting to and permanently enjoined from an identical pattern of infringing conduct in the identical field of business, personally adopted another party's identical registered mark on the same day the judgment was entered, without retaining trademark counsel and without any clearance beyond free online

searches limited to a single International Class, and has continued Defendants' infringing use and Clickup Inc.'s application despite that history and despite this litigation and the pending TTAB proceeding. Ashkenazi has admitted at deposition that he recalls seeing "Click" formative marks during his pre-filing search and proceeded anyway, that his belief that an identical mark in a different class was permissible was not based on the advice of any counsel, and that Defendants continue to assert that the CLICKUP mark is registered to them notwithstanding the pending opposition. Defendants have at all relevant times had constructive notice of Plaintiff's rights under 15 U.S.C. § 1072 and have continued their use of the mark and the prosecution of their application after receiving actual notice of those rights. Defendants' repeat and adjudicated infringement, their willful blindness in adopting the mark, and their refusal to abandon a name in which they have invested nothing render this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

57. Defendants' conduct constitutes infringement of Plaintiff's registered mark in violation of 15 U.S.C. § 1114.

58. Defendants' infringement has caused and, unless enjoined, will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## COUNT II

## Federal Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125(a)

59. Plaintiff realleges and incorporates the foregoing paragraphs.

60. Defendants' use of CLICKUP is likely to cause confusion as to the origin, sponsorship, or approval of Defendants' services, in violation of 15 U.S.C. § 1125(a)(1)(A).

61. Defendants' conduct described in this Count was and is willful, for the reasons alleged above.

62. Defendants' conduct has caused and, unless enjoined, will continue to cause irreparable injury to Plaintiff, and Plaintiff is entitled to a rebuttable presumption of irreparable harm under 15 U.S.C. § 1116(a). Plaintiff is further entitled to recover Defendants' profits, Plaintiff's damages, and the costs of the action under 15 U.S.C. § 1117(a).

**COUNT III**

**Federal Trademark Dilution, 15 U.S.C. § 1125(c)**

63. Plaintiff realleges and incorporates the foregoing paragraphs.

64. Plaintiff's CLICKUP mark is famous within the meaning of 15 U.S.C. § 1125(c)(2)(A), and Defendants' use of an identical mark is likely to cause dilution by blurring.

65. Plaintiff's CLICKUP mark became famous before October 29, 2024, which, on information and belief, is the earliest date on which Defendants adopted or made any use of the CLICKUP mark.

66. Defendants' use of an identical mark is likely to cause dilution by blurring, including because the marks are identical, Plaintiff's mark is distinctive and in substantially exclusive use by Plaintiff, Plaintiff's mark enjoys a high degree of recognition, Defendants intended to create an association with Plaintiff's mark, and actual association has occurred, as reflected in the misdirected correspondence described above. Ashkenazi has admitted that he chose the CLICKUP mark because it "gives off the connotation of brand visibility," the very association of prominence and recognition that Plaintiff's famous mark supplies.

67. Defendants willfully intended to trade on the recognition of Plaintiff's famous mark, entitling Plaintiff to monetary relief under 15 U.S.C. § 1125(c)(5) in addition to injunctive relief.

**COUNT IV**

**Cybersquatting, 15 U.S.C. § 1125(d)**

68. Plaintiff realleges and incorporates the foregoing paragraphs.

69. Plaintiff's CLICKUP mark was distinctive, and was famous, when Ashkenazi acquired and registered the click-up.com domain name on October 29, 2024.

70. The click-up.com domain name is identical or confusingly similar to Plaintiff's CLICKUP mark, differing only by the insertion of a hyphen, and is dilutive of Plaintiff's famous mark.

71. Clickup Inc. was not incorporated until November 12, 2024, two weeks after Ashkenazi acquired the click-up.com domain name. When he acquired and registered it, CLICKUP was not the legal name of any Defendant, and, on information and belief, no Defendant was commonly identified by that name.

72. Public WHOIS records reflect that the click-up.com domain name was first registered on November 14, 2004. On information and belief, a prior registrant unrelated to Defendants registered it and held it until Ashkenazi acquired it. Clickup Inc. has admitted that the domain name was purchased on October 29, 2024, and that Clickup Inc. is now its registered owner. Ashkenazi testified that he bought it himself through GoDaddy. Defendants' verified interrogatory responses state that LevelUp Staff, Inc. obtained it before Clickup Inc. was incorporated. On information and belief, Ashkenazi purchased and registered the domain name on October 29, 2024, in his own name or in the name of LevelUp Staff, Inc., the company he solely owned and controlled, and later transferred the registration to

Clickup Inc. Ashkenazi's acquisition was a registration of the domain name within the meaning of 15 U.S.C. § 1125(d)(1)(A)(ii), and his purchase of the domain name for consideration was trafficking in it within the meaning of 15 U.S.C. § 1125(d)(1)(E). Ashkenazi personally made the decision to acquire the domain name and carried it out, and he is liable for that bad-faith registration and trafficking. Clickup Inc. is liable as the current registrant of the domain name. On information and belief, Ashkenazi uses the domain name as Clickup Inc.'s authorized licensee. See 15 U.S.C. § 1125(d)(1)(D).

73. Defendants registered and trafficked in, and continue to use and maintain, the click-up.com domain name with a bad faith intent to profit from Plaintiff's mark. Among other things, before acquiring click-up.com, Ashkenazi searched for and confirmed that clickup.com was already registered to another party and then acquired a hyphenated variant of it; Defendants had no trademark or other intellectual property rights in the CLICKUP name when Ashkenazi acquired the domain name; Defendants have made no bona fide use of the domain name in connection with the offering of any goods or services, maintaining only a dormant "Coming Soon" page; Ashkenazi acquired the domain name the same day he signed a consent judgment resolving claims that his company had infringed another party's mark; and Defendants have continued to hold the domain name after receiving actual notice of Plaintiff's rights. See 15 U.S.C. § 1125(d)(1)(B)(i).

74. Plaintiff is entitled to an order transferring the click-up.com domain name to Plaintiff under 15 U.S.C. § 1125(d)(1)(C) and, at Plaintiff's election at any time before final judgment, to statutory damages under 15 U.S.C. § 1117(d) in lieu of actual damages and profits.

//

## COUNT V

## Common Law Trademark Infringement

75. Plaintiff realleges and incorporates the foregoing paragraphs.

76. Plaintiff owns common law trademark rights in the CLICKUP mark throughout the United States, including in New Jersey, through continuous use of the mark in commerce since at least December 1, 2016, long prior to any use of the mark by Defendants.

77. Defendants' conduct also constitutes trademark infringement under the common law of the State of New Jersey.

78. Defendants' use of an identical mark in connection with related services offered through overlapping channels is likely to cause consumer confusion, and it has caused and will continue to cause damage to Plaintiff and irreparable harm for which Plaintiff has no adequate remedy at law.

## COUNT VI

## Common Law Unfair Competition

79. Plaintiff realleges and incorporates the foregoing paragraphs.

80. Defendants' use of the CLICKUP mark constitutes passing off of Defendants' services as those of, or as affiliated with, sponsored by, or approved by, Plaintiff, and has caused and will continue to cause damage and irreparable harm to Plaintiff.

81. Defendants' conduct constitutes unfair competition under the common law of the State of New Jersey.

## COUNT VII

## Statutory Unfair Competition, N.J.S.A. 56:4-1 and 56:4-2

82. Plaintiff realleges and incorporates the foregoing paragraphs.

83. Defendants' conduct described above constitutes the appropriation, for Defendants' own use, of the name, brand, trademark, reputation, and goodwill of Plaintiff, in violation of N.J.S.A. 56:4-1.

84. Defendants' violation was and is willful, and it has caused and, unless enjoined, will continue to cause injury to Plaintiff, including through the diversion of consumer attention and prospective business, injury to the goodwill embodied in Plaintiff's CLICKUP marks, and expenses incurred in identifying and addressing communications misdirected as a result of Defendants' use of a mark identical to Plaintiff's.

85. Under N.J.S.A. 56:4-2, Plaintiff is entitled to an injunction against Defendants' practices and to all damages, direct and indirect, caused by those practices, which damages may be trebled in the Court's discretion.

## COUNT VIII

## Trademark Dilution, N.J.S.A. 56:3-13.20

86. Plaintiff realleges and incorporates the foregoing paragraphs.

87. Plaintiff's CLICKUP mark is distinctive and is famous in the State of New Jersey within the meaning of N.J.S.A. 56:3-13.20, in view of, among other things, the duration and extent of Plaintiff's use and advertising of the mark, including advertising directed to New Jersey consumers, the nationwide geographic reach of Plaintiff's use, and the high degree of recognition of the mark in New Jersey.

88. In addition, and in the alternative, the CLICKUP mark possesses a high degree of fame in the market for software and services used by businesses to manage their work, including hiring and recruiting workflows, among the business customers to whom both Plaintiff and Defendants direct their services, including healthcare, senior living, home care, and hospice providers. Defendants' use of an identical mark is directed at that same class of business purchasers.

89. Defendants' use of the CLICKUP mark began after Plaintiff's mark became famous in New Jersey and causes dilution of the distinctive quality of Plaintiff's mark.

90. Defendants willfully intended to trade on Plaintiff's reputation and to cause dilution of Plaintiff's mark, entitling Plaintiff to injunctive relief and, in the Court's discretion, to the other remedies provided under the New Jersey Trademark Act, N.J.S.A. 56:3-13.1a et seq.

**COUNT IX**

**Declaratory Judgment, 28 U.S.C. §§ 2201–2202**

91. Plaintiff realleges and incorporates the foregoing paragraphs.

92. An actual and justiciable controversy exists between the parties as to the validity of the purported assignment of U.S. Trademark Application Serial No. 98,830,035 from LevelUp Staff, Inc. to Clickup Inc. and, by extension, as to Defendants' claimed rights in the CLICKUP mark. Defendants have asserted, as an affirmative defense in Opposition No. 91301165 and otherwise, that the purported assignment was proper and that Clickup Inc. holds rights in the CLICKUP mark by virtue of that assignment.

93. Under 15 U.S.C. § 1060(a)(1), an application to register a mark filed on an intent to use basis may not be assigned before an Amendment to Allege Use or a Statement of Use is filed, except to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that business is ongoing and existing. No Amendment to Allege Use or Statement of Use had been filed or accepted as of the date of the purported assignment, and the purported assignment was not accompanied by any purchase agreement or any other written agreement and, on information and belief, was not accompanied by any bona fide transfer of an ongoing and existing business. In the alternative, if Defendants' sworn assertion

that all business operations, assets, goodwill, and client relationships of LevelUp Staff, Inc. were transferred to Clickup Inc. is credited, then Clickup Inc. is the mere continuation of the same enjoined business described above.

94. Plaintiff is entitled to a declaration that the purported assignment is void under 15 U.S.C. § 1060(a)(1), that the application is void or unenforceable as improperly assigned, and that Defendants possess no rights in the CLICKUP mark superior to Plaintiff's.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

1. A permanent injunction enjoining Defendants, their officers, agents, employees, and all persons acting in concert with them, from using the CLICKUP mark or any confusingly similar mark, including click-up.com.
2. An order under 15 U.S.C. § 1125(d)(1)(C) requiring Defendants to transfer the registration of the click-up.com domain name to Plaintiff.
3. An order pursuant to 15 U.S.C. § 1119 that Clickup Inc.'s application Serial No. 98,830,035 be refused registration, and that any registration issuing be cancelled.
4. A declaration that Defendants' purported assignment from LevelUp Staff, Inc. is void and that Defendants have no rights in the CLICKUP mark superior to Plaintiff's.
5. A finding that Defendants' infringement was willful, an award of Defendants' profits, Plaintiff's actual damages, and an enhancement of that award up to three times the amount found as actual damages, as the Court finds just, under 15 U.S.C. § 1117(a), against Defendants jointly and severally.

6. An award of treble damages under N.J.S.A. 56:4-2 and, at Plaintiff's election, statutory damages under 15 U.S.C. § 1117(d) for Defendants' registration and use of the click-up.com domain name, in an amount to be determined.
7. A finding that this is an exceptional case under 15 U.S.C. § 1117(a) and an award of Plaintiff's reasonable attorneys' fees and costs.
8. An order pursuant to 15 U.S.C. § 1118 requiring Defendants to deliver up for destruction all letterhead, business cards, document templates, forms, signs, prints, packages, advertisements, and other materials in Defendants' possession or control bearing the CLICKUP mark or any confusingly similar mark.
9. Pre-judgment and post-judgment interest.
10. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 24, 2026

*s/ Amanda L. Bruss*

Amanda L. Bruss, Esq. (NJ Attorney ID No. 316142019)
Kristen G. Roberts, Esq. (pro hac vice forthcoming)
Trestle Law, APC
3131 Camino Del Rio N. # 380
San Diego, CA 92108
(619) 343-3655
amanda@trestlelaw.com
kristen@trestlelaw.com
*Attorneys for Plaintiff Mango Technologies, Inc.*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to L. Civ. R. 11.2, I certify that the matter in controversy is the subject of the following other actions and proceedings: (1) Mango Technologies, Inc. v. Clickup Inc., et al., No. 3:26-cv-04493-JO-DDL (S.D. Cal.), between Plaintiff and both Defendants, which was dismissed for lack of personal jurisdiction, and in which judgment was entered, on November 19, 2026, and in which the time to appeal has not yet expired; (2) Opposition No. 91301165, pending before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office, between Plaintiff, as opposer, and Defendant Clickup Inc., as applicant, concerning Application Serial No. 98,830,035, which the Board suspended on September 23, 2026 pending final disposition of the Southern District of California action; and (3) the ex parte examination of Plaintiff's Application Serial No. 99,348,022, currently suspended by the United States Patent and Trademark Office pending the disposition of Application Serial No. 98,830,035 and Opposition No. 91301165. Other than the foregoing, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I certify under penalty of perjury that the foregoing is true and correct. Executed on November 24, 2026.

*s/ Amanda L. Bruss*

Amanda L. Bruss, Authorized Attorney, Trestle Law, APC

## LOCAL CIVIL RULE 201.1 CERTIFICATION

Pursuant to L. Civ. R. 201.1(d), I certify that this action is not eligible for compulsory arbitration under L. Civ. R. 201.1(d) because the relief Plaintiff seeks does not consist only of money damages; Plaintiff also seeks injunctive and declaratory relief.

I certify under penalty of perjury that the foregoing is true and correct. Executed on November 24, 2026.

*s/ Amanda L. Bruss*

Amanda L. Bruss, Authorized Attorney, Trestle Law, APC